UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

E-IMAGEDATA CORP.,

        Plaintiff,

                                Case No. 2:15-cv-00658-LA

v.

DIGITAL CHECK CORP. d/b/a
ST IMAGING,

        Defendant.

_____

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

_____

## <u>INTRODUCTION</u>

This is a false advertising case under the Lanham Act. Plaintiff e-Image claims that defendant ST Imaging made untrue representations about e-Image's ScanPro product and about ST Imaging's ViewScan product. According to e-Image, the supposed false advertising caused harm. But after two years, twenty-five depositions around the country, and the exchange of thousands of pages of documents produced in discovery, e-Image cannot identify a single customer, anywhere, who purchased ST Imaging's product instead of e-Image's product due to the alleged false advertising. In fact, the majority of sales involving the products at issue are made after an in-person product demonstration where the customer gets to see the machine operate in real time and can decide for himself or herself, irrespective of any claimed capabilities stated in marketing materials, what the machine can do. Otherwise, the record shows customers considered factors such as a better price or ease of use that are unrelated to any claimed false

representations. In sum, e-Image has only its own self-serving speculation, which is not enough to get past summary judgment.

Lacking evidence of any actual harm, Image argues it is entitled to disgorgement of ST Imaging's alleged wrongful profits and even its gross (not net) sales, which according to e-Image is virtually every dollar the company has received from product sales since 2010. Not surprisingly, by swinging for the fences, e-Image strikes out. Even if e-Image could prove the literal falsity claim, this alone does not excuse e-Image from proving causation by showing some injury flowing from the alleged false advertising. Given the complete absence of any such harm, there is no reason for the court to exercise its equitable powers on behalf of e-Image.

In fact, the equities of this case strongly favor ST Imaging. ███████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ Frustrated by strong competition from ST Imaging, e-Image supported a bid protest with the Government Accountability Office (GAO) that was unsuccessful and resulted in another federal agency labeling the presentation of the ScanPro made to the agency as "very deceptive." And during the time when e-Image was supposedly victimized by false advertising, it remained the largest player in its market segment while ST Imaging, ████████████████████████████████████████████████████████████ ██████████████████████

e-Image prefers to fight in the courtroom rather than fight to win in the marketplace. This is not a valid basis for a Lanham Act false advertising claim. e-Image has had ample opportunity to develop evidence that supports its contentions of harm, but has failed to do so. As such, there are no issues to be tried, and entry of summary judgment in favor of ST Imaging is warranted.

## UNDISPUTED MATERIAL FACTS

### A. Parties

Plaintiff e-ImageData Corp. ("e-Image") is a Wisconsin corporation with a principal place of business located at 340 Grant Street, Hartford, Wisconsin 53027. (Defendant's Civil L.R. 56 Statement of Proposed Material Facts, ¶ 1, *hereafter* ("DPMF ¶ ___").) Defendant Digital Check Corp. d/b/a ST Imaging ("ST Imaging") is a Delaware corporation with a principal place of business located at 630 Dundee Road, Suite 210, Northbrook, IL 60062. (*Id.* ¶ 2.)

### B. Microform Viewers and Imaging Systems Manufactured by e-Image and ST Imaging

ST Imaging and e-Image manufacture and sell desktop microform viewer and imaging systems. (Joint Statement of Stipulated Facts, Dkt. 68, ¶ 10.) Microform viewer and imaging systems allow a user to view microforms such as microfilm and microfiche. (*Id.*, ¶¶ 12-13.)

e-Image and ST Imaging's desktop microform viewer and imaging systems are designed for public use. The systems are used primarily by libraries, universities, government entities, and businesses to allow microfilm to be viewed on a screen or to be converted to digital image files that can be edited using digital editing techniques and printed, e-mailed, shared, or saved to other electronic media. (DPMF ¶ 3.)

e-Image sells a line of microform viewers known as the ScanPro, including models designated as the ScanPro 1100, ScanPro 2000, ScanPro 2200, ScanPro 3000 and ScanPro i9300 microfilm scanners (hereafter collectively the "ScanPro Products"). (DPMF ¶ 4.) ST Imaging sells a line of microform viewers known as the ST ViewScan I, ST ViewScan II, and ST ViewScan III (collectively "the ViewScan Products"). (*Id.* ¶ 5.)

## C.    Marketing and Sales of Microform Viewers and Imaging Systems

e-Image and ST Imaging sell their digital microfilm scanners through a national network of resellers.  (DPMF ¶ 6.)  ███████████████████████████████████████████████

████████████████████████████████████████████████████████ (*Id. ¶* 7.)

████████████████████████████████████████████████████████

██████████████████████████ (DPMF ¶ 8.) █████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ (*Id.* ¶ 9.) █████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.* ¶ 10.)

According to e-Image Vice President of Sales Jeff Middleton, ████████████

████████████████████████████████████████████████████████

(DPMF ¶ 11.) ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ (*Id.* ¶ 12.) ████████████████████████████████████

████████████████████████████████████████████████████████

████████ (*Id.*  ¶ 13.) ████████████████████████████████

████████████████████████████████████ (*Id.* ¶ 14.) ████

████████████████████████████████████████████████████████

████████████████████████████████████ (*Id.* ¶ 15.)

## D. Customers' Reasons for Purchasing Microform Viewers and Imaging Systems

For customers, the product demonstration was an important factor in deciding whether to purchase the ViewScan or the ScanPro. (DPMF ¶ 16.) In addition to the product demonstration, customers identified the following factors driving the decision to purchase the ViewScan instead of the ScanPro: (a) price; (b) relative ease of use; (c) relative ease of training new users; (d) █████ ████████████████████████████████████████ and (e) ███████████████████ ██████████████████ (*Id.* ¶ 17.)

## E. Testimony by e-Image and Its Resellers About Factors Driving Sales

e-Image and e-Image's resellers for the ScanPro Products identified the following factors as driving customers' purchasing decision: ████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ (DPMF ¶ 18.)

Al Slayton, the vice president of the document imaging division at Mid-America Business Systems, a reseller for e-Image for Minnesota and Western Wisconsin, is not aware of any sales lost to ST Imaging because of information that was misstated by ST Imaging about its own products or about e-Image's ScanPro Products. (DPMF ¶ 19.) ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.* ¶ 20.) In one instance, a county government purchased a microform viewer from ST Imaging because the individual decision-maker's spouse worked at a state university which had an ST Imaging

scanner.  (*Id.* ¶ 21.)  Slayton acknowledges "[c]ustomers make decisions for many different

reasons, and sometimes they go by what another library – or friend had done."  (*Id.* ¶ 22.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ (DPMF ¶ 23.)

███████████████████████████████████████████████

███████████████████████████████████████████████

(DPMF ¶ 24.)  ██████████████████████████████████

██████████████████ (*Id.* ¶ 25.)  ███████████████

███████████████████████████████████████████████

██████████████████████████ (*Id.* ¶ 26.)

███████████████████████████████████████████████

█████████████████████████████████ (DPMF ¶ 27.)  ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████ (*Id.* ¶ 28.)  █████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ (*Id.* ¶ 29.)

███████████████████████████████████████████████

██████████████████. (DPMF ¶ 30.)  ██████████████████



(*Id.* ¶ 31.)

(*Id.* ¶ 32.)

(*Id.* ¶ 33.)

(DPMF ¶ 34.)

(DPMF ¶ 35.)  e-Image lost out to ST Imaging on a sale

to Notre Dame in 2013 and, in response to Mr. Middleton's inquiries, ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.* ¶ 36.)

**F.     Basis for e-Image's Alleged Lost Sales**

e-Image gathers information on sales it has lost to ST Imaging and other industry

competitors.  (DPMF ¶ 37.) ████████████████████████████████████

████████████████████████████████ (*Id.* ¶ 38.) ████████████████

████████████████████████████████████████████████████████

████████████████████████████████ (*Id.* ¶ 39.)

e-Image did not identify any sales it lost because of  alleged misrepresentations by ST

Imaging related to OSHA, NRTL, UL, or cUL.  (DPMF ¶ 40.)  There is no testimony by any

customer who purchased a ViewScan Product instead of a ScanPro Product that he or she based

the purchasing decision on any alleged false advertising.  (*Id.* ¶ 41.) ████████████████

████████████████████████████████ (*Id.* ¶ 42.)

**G.     e-Image's Alleged Damages**

e-Image provided the following response to an interrogatory regarding identification of

any pecuniary losses and/or actual damages:

**INTERROGATORY NO 9:**

Identify any pecuniary losses and/or actual damages, if any, that e-Image contends it has suffered as a result of each Challenged ST Imaging Act, and for each, state the amount of the loss or damage, the basis for computing the same and any assumptions used in computing the same.

**ANSWER:** e-Image objects to this Interrogatory as premature, overly broad, and unduly burdensome. This Interrogatory is overly broad and unduly burdensome to the extent it seeks "any" pecuniary loss. This Interrogatory is premature because e-Image's investigation is ongoing. e-Image will supplement its response as it learns more information through discovery. This Interrogatory is also premature to the extent it seeks information that is the subject of expert disclosures. To the extent e-Image intends to disclose expert reports regarding damages, it will do so in accordance with the Court's scheduling order and Rule 26. Additionally, e-Image objects to producing competitively sensitive financial information before a protective order is entered. e-Image will amend its response as necessary after a protective order is in place.

e-Image did not provide a supplemental response to this interrogatory. (DPMF ¶ 43.)

With respect to damages, the report of e-Image's expert witness, Jon Tepp, states:

(DPMF ¶ 44.) Mr. Tepp testified at his deposition that he believed



(*Id.* ¶ 45.)    e-Image, through its expert witness Mr. Tepp, contends that ███████

████████████████████████████████████████████████████████████████

███████████████    (*Id.* ¶ 46.)

### H. Failed Bid Protest

U.S. Department of the Interior, National Park Service, posted an RFQ for the purchase of a microfilm/microfiche and ultimately selected the ViewScan Product over the ScanPro product. (DPMF ¶ 47.) An e-Image reseller, MEDI, commenced a bid protest with the General Administration Office (GAO). (*Id.*¶ 48.)

In its bid protest, MEDI argued "that the NMS scanner system does not satisfy the solicitation's requirement that the camera have a 'minimum 25 megapixels.'" (DPMF ¶ 49.) In assessing MEDI's arguments, the GAO stated, "MEDI and NMS both agree that the term 'megapixels' is understood to describe the number of pixels a camera sensor can capture." (*Id.* ¶ 50.) The bid protest was denied in part and dismissed in part, with the GAO concluding: "MEDI has not shown why the scanner proposed by NMS, which captures 30 megapixels of unique pixel data through [DELETED] of its camera sensor, does not meet its own interpretation of the solicitation." (*Id.* ¶ 51.)

### I. Admissions by e-Image



(DPMF ¶ 52.)



(DPMF ¶ 53.)  e-Image filed this lawsuit on May 29, 2015. (*Id.* ¶ 54.)

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Seventh Circuit has described summary judgment as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (*quoting Hammel v. Eau Galle*

*Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). To defeat summary judgment, the non-moving party must identify "dispute[s] over facts that might affect the outcome of the suit under the governing law" and therefore allow a trier of fact to find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Otherwise, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

## LEGAL STANDARD FOR FALSE ADVERTISING

e-Image's only remaining claim against ST Imaging is for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (Dkt. 67.) To make a prima facie case for false advertising under § 43 of the Lanham Act, 15 U.S.C. § 1125, a plaintiff must prove:

(1)  a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2)  the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3)  the deception is material, in that it is likely to influence the purchasing decision;

(4)  the defendant caused its false statement to enter interstate commerce; and

(5)  the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir.1999); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

# ARGUMENT

## E-IMAGE LACKS EVIDENCE OF HARM NECESSARY TO OBTAIN DAMAGES. THEREFORE, ENTRY OF SUMMARY JUDGMENT IS WARRANTED.

A plaintiff who proves a violation of the Lanham Act's prohibition against false advertising may seek to recover: (1) any damages sustained by the plaintiff; (2) defendant's profits; and (3) the costs of the action. *See* 15 U.S.C. § 1117(a). Courts have noted the difference between the proof required for an award of damages, which arises out of a claim at law, and disgorgement of the defendant's wrongful profits, which is an equitable claim. Thus, "to recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Hot Wax, Inc. v. Turtle Wax., Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999). In contrast, "[w]hile damages directly measure the plaintiff's loss, defendant's profits measure the defendant's gain." *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1096 (7th Cir. 1994) (*quoting George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992). Therefore, "Disgorgement requires that the defendant give up 'those gains…properly attributable to the defendant's interference with the claimant's legally protected rights.'" *Kokesh v. S.E.C.*, --- S. Ct. ---, 2017 WL 2407471 at *3 (June 5, 2017) (*quoting* Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment a, p. 204 (2010)). In either case, "any monetary award ought to be grounded in either an ascertainable loss of the plaintiff or a benefit accruing to the defendant on account of its infringement." *Sands, Taylor & Wood Co. v. Quaker Oats Co. [Sands II]*, 34 F.3d 1340, 1349 (7th Cir. 1994).

Here, there is no legal or equitable basis for e-Image to claim damages or disgorgement. First, there is no showing the alleged false statements caused any injury. On this basis alone, the Lanham Act claim fails in its entirety. Moreover, with respect to claimed actual damages, e-Image admits it is not pursuing lost profits, which closes the door on any such claims.

Disgorgement of ST Imaging's alleged profits is out of the question because there is no evidence that ST Imaging was unjustly enriched as a result of any alleged false advertising. In sum, despite hurling numerous allegations of false advertising, e-Image cannot make the threshold showing of harm needed for its case to proceed to trial.

> **A.** **e-Image Cannot Raise a Genuine Issue of Material Fact Regarding Whether ST Imaging's Alleged False Statements Were Material and Caused Any Injury or Unjust Enrichment.**

e-Image cannot obtain either actual damages or ST Imaging's profits in this matter because it has no evidence that any alleged false statements materially influenced a customer's purchasing decision and caused e-Image to suffer any injury. To prove the proximate cause necessary to support a Lanham Act false advertising claim, a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiffs." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 124 S.Ct. 1377, 1390-91 (2014); *see also Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) (a plaintiff alleging false advertising under the Lanham Act must assert "a discernable competitive injury" to have standing).

This requirement applies where the plaintiff is seeking actual damages and also where disgorgement of the defendant's profits is sought. *See, e.g., Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 464 (5th Cir. 2001); *Riddell, Inc. v. Schutt Sports, Inc.*, 724 F. Supp. 2d 963, 979-80 (W.D. Wis. 2010). It also applies in cases involving claims of literal falsity. *Grubbs v. Sheakley Group, Inc.,* 807 F.3d 785, 802 (6th Cir. 2015); *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 376 (5th Cir. 2002); *William H. Morris Co. v. Group W, Inc.,* 66 F.3d 255, 257 (9th Cir. 1995); *Thermal Design, Inc. v. Guardian Building Prods.*, No. 08-C-828, 2012 U.S. Dist. LEXIS 83301 at *25 (E.D. Wis. June 15, 2012) ("While a

finding of literal falsity does support a presumption of actual confusion among consumers, that presumption does not somehow demonstrate that [the plaintiff] was damaged by such confusion in this case.").  As the Seventh Circuit has explained, "Section 43(a)(1)(B) offers relief only to one who 'is or is likely to be damaged by' the misrepresentation.  Proof of likely confusion is essential to show injury – actual or potential – without which there is not even a case or controversy."  *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 805-06 (7th Cir. 2001) (*quoting* 15 U.S.C. § 1125(a)(1)(B)).

e-Image cannot show damage caused by the claimed false advertising. Although e-Image alleges it was harmed due to claimed false advertising by ST Imaging, it has no actual evidence to support these allegations at trial.  The only customers deposed in this case testified that they purchased the ST Imaging ViewScan based on other factors, such as price and ease of use.  (*See* DPMF ¶¶ 16-17.)

Likewise, e-Image's own efforts to obtain information about the reasons why customers purchased the ST Imaging ViewScan rather than the e-Image ScanPro confirmed that those customers, too, bought the ST Imaging product based upon considerations such as ██████████ ██████████████ and other factors that have nothing to do with any alleged false advertising. (*See* DPMF ¶¶ 18-36.) This is not surprising, given that █████████████████████████████████ ██████████████████████████████████████████████████████████████████ in contrast to the classic Lanham Act case where the only communication between the seller and customer is print or broadcast advertising.  (*See id.* ¶¶ 11-13.) ████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████ (*See id.* ¶¶ 14-15.)

e-Image has no evidence that the alleged false statements in ST-Imaging's advertising were material to any customer's purchasing decision, and this alone is fatal to its claim. *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51 (2d Cir. 2016) (granting summary judgment when there was no evidence that misstatement would cause customers to change their purchasing decision); *Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298 (11th Cir. 2010) ("Even if an advertisement is literally false, the plaintiff must still establish materiality"); *Marvellous Day Electric (S.Z.) Co. v. Ace Hardware Corp.*, 900 F. Supp. 2d 835 (N.D. Ill. 2012), *vacated in part on other grounds by* 2013 U.S. Dist. LEXIS 74869 (N.D. Ill. May 28, 2013); *Derby Indus. v. Chestnut Ridge Foam, Inc.*, 202 F. Supp. 2d 818 (N.D. Ind. 2002).

e-Image has also failed to identify a single sale that it lost or that ST Imaging wrongfully gained on the basis of ST Imaging's alleged false advertising. Rather, the evidence shows that ST Imaging beat e-Image not on the basis of any false advertising, but by offering features customers preferred at a better price. "That is the process known as competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999). Competition is not a wrong that the Lanham Act is intended to remedy. By the same token, the Lanham Act is not meant to be used as a weapon to attack a competitor. Without any proof that ST Imaging's alleged false advertisements resulted in any sales, or that e-Image suffered any injury or ST Imaging wrongfully obtained any profits as a proximate result of the allegedly false advertising, e-Image cannot raise a genuine issue of material fact regarding causation, which requires dismissal of its Lanham Act claim.

### B.    e-Image Abandoned Any Claim for Actual Damages.

In its Second Amended Complaint, e-Image requests an award of "[c]ompensatory damages . . . including without limitation, compensation for lost sales, lost sales opportunities,

costs of responsive advertising, and other actual damages." (Dkt. 29, at 15 ¶ B.) Although e-Image pled this claim, ultimately, it has been abandoned.

There is no evidence to support any claim for lost profits by e-Image. Asked to identify lost profits in written discovery, e-Image's response was basically, "wait for our expert report." (*See* DPMF ¶ 43.) Notably, the damages expert for e-Image, Jon Tepp, states in his report █████

████████████████████████████████████████████████████████

███████████████ (*See id.* ¶ 44) (emphasis added). Tepp's report does not include any calculations, analysis, or other information regarding alleged lost profits. At his deposition, Tepp confirmed ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(*see id.* ¶ 45.) In short, e-Image has provided no evidence to support a jury finding that it lost profits as a result of ST Imaging's alleged false advertising. On this basis alone, any claim for alleged lost profits should be rejected.

In sum, there is no factual or legal basis for e-Image to advance any claim for alleged lost profits, corrective advertising, or other claimed actual damages. Summary judgment is proper.

### C. e-Image Is Not Entitled to Disgorgement Damages.

e-Image also does not have sufficient evidence to recover disgorgement damages under the Lanham Act. The primary purpose of the disgorgement remedy under the Lanham Act is to make violations unprofitable to the infringing party. *Sands, Taylor & Wood Co. v. Quaker Oats Co. [Sands I]*, 978 F.2d 947, 961 (7th Cir. 1992). In doing so, courts are limited by "equitable considerations" and the statutory mandate that any award cannot constitute a penalty. *Id.*; *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir 1985); 15 U.S.C. § 1117(a). Therefore, "any monetary award ought to be grounded in either an ascertainable loss

of the plaintiff or a benefit accruing to the defendant on account of its infringement." *Sands, Taylor & Wood Co. v. Quaker Oats Co. [Sands II]*, 34 F.3d 1340, 1349 (7th Cir. 1994).

In applying these standards, numerous courts have recognized that a plaintiff must prove something other than the existence of a literally false statement in an advertisement to recover a defendant's profits. For example, in *Balance Dynamics Corp. v. Schmitt Industries*, the Sixth Circuit upheld the denial of disgorgement damages even when the plaintiff provided proof of literally false statements:

> Balance Dynamics argued that because it could show that Schmitt knowingly and willfully made false statements, it was entitled to disgorgement of profits. In a closely reasoned R&R, Magistrate Judge Pepe rejected this contention and found that Balance Dynamics was only entitled to disgorgement if it could show that defendant gained additional sales due to the advertisement, or that plaintiff lost sales, or was forced to sell its product at a lower price. As Magistrate Judge Pepe pointed out, § 35(a) of the Lanham Act makes clear that an award of damages shall be "subject to the principles of equity" but also states that the award is to "constitute compensation and not a penalty." Reviewing the legislative history and case law concerning disgorgement of profits, Magistrate Judge Pepe concluded that unless there is some proof that plaintiff lost sales or profits, or that defendant gained them, the principles of equity do not warrant an award of defendant's profits. We agree….

204 F.3d 683, 695 (6th Cir. 2000); *see also Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 464 (5th Cir. 2001) ("where a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefitted from the allegedly false advertising, the plaintiff will not be permitted to recover any of the defendant's profits under 15 U.S.C. § 1117(a)"); *A&H Sportswear Co. v. Victoria's Secret Stores,* 967 F. Supp. 1457, 1478 (E.D. Pa. 1997) ("In the case at bar we have found limited evidence of actual confusion, only a possibility of confusion, and no intent to deceive the public or to cause confusion. Thus, we feel that an award of profits is inappropriate.").

Similarly, in *Riddell, Inc. v. Schutt Sports, Inc.*, the Western District of Wisconsin granted summary judgment on Schutt's Lanham Act claim, even though it proved that Riddell engaged in false advertising. 724 F. Supp. 2d 963 (W.D. Wis. 2010). In that case, the court found that Riddell falsely claimed in its advertising that a study showed a reduced risk of concussions in its Youth football helmets line, which it never actually tested for that purpose. *Id.* at 979. However, Schutt did not have any evidence that it lost sales, market share, or customers. *Id.* at 979-80. In other words, just like e-Image here, "Schutt…failed to identify any loss of its own or any profit of plaintiffs that might be related to the single false advertisement identified." *Id.* at 980. Under those circumstances, the court noted there was "no basis for loss or unjust enrichment in sight," declined to award any sum in either actual damages or disgorgement for the false advertisement, and granted summary judgment on Schutt's Lanham Act claim. *Id.* The same analysis and result applies to e-Image's faulty claims.

Moreover, the equities weigh heavily against e-Image.



(DPMF ¶ 52.)

(*Id.* ¶ 53.) These startling admissions speak volumes about e-Image's real reasons for pursuing this litigation.

Also notable is e-Image's high-profile loss of a bid protest before the GAO in September 2014 – months prior to e-Image's filing of this lawsuit – which was a disaster from e-Image's perspective for multiple reasons. (*See* DPMF ¶¶ 47-51.) First, the GAO rejected e-Image's argument about the number of megapixels generated by the ScanPro versus the ViewScan, one of the main arguments that e-Image advances in this lawsuit. Second, as part of the bid protest, the Department of the Interior publicly took the position that the "presentation of [the ScanPro], both to NPS and GAO, is very deceptive." (*See* Reid Decl. ¶ 37 Ex. JJ.) e-Image may believe that its brand has been tarnished, but any harm e-Image may have suffered is entirely self-inflicted.

This case has been pending for over two years. Twenty-five depositions have been conducted. The parties have exchanged numerous sets of written discovery and tens of thousands of pages of documents. Yet e-Image cannot identify a single customer that purchased the ViewScan instead of the ScanPro due to any alleged false advertising. Despite this complete lack of evidence, e-Image asks this Court to order ST Imaging ████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ Without any evidence that ST Imaging was unjustly enriched by making all of its sales and earning all of its profits through false advertising, the award that e-Image seeks would be both a windfall to e-Image and the type of penalty that the Lanham Act forbids. *See* 15 U.S.C. § 1117(a) (damages under the Lanham Act "shall constitute compensation and not a penalty"); *Otis Clapp & Son, Inc.*, 754 F.2d at 744 ("§ 1117 forbids the district court from allowing recoveries that are so excessive as to amount to a penalty").

## CONCLUSION

e-Image cannot show that any of the claimed false advertising moved the needle at all in terms of customer purchasing decisions. Customers cited factors such as what they learned during an in-person product demonstration, price, and functionality as key reasons for buying the ST Imaging ViewScan instead of the e-Image ScanPro. There simply is no evidence of injury, harm or damage to e-Image caused by any alleged false advertising by ST Imaging. Therefore, summary judgment for ST Imaging is warranted.

Dated this 26th day of June, 2017.

By: _s/ Mark E. Schmidt_
Philip C. Reid, SBN 1009464
Steven L. Nelson, SBN 1009779
Mark E. Schmidt, SBN 1052450
Kelly J. Noyes, SBN 1064809
von BRIESEN & ROPER, s.c.
411 E. Wisconsin Ave., Suite 1000
Milwaukee, WI 53202
Telephone: (414) 276-1122
Fax: (414) 276- 6281
preid@vonbriesen.com
snelson@vonbriesen.com
mschmidt@vonbriesen.com
knoyes@vonbriesen.com

*Attorneys for Defendant Digital Check Corp.*
*d/b/a ST Imaging*

28818035_4.DOCX