UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

E-IMAGEDATA CORP.,

    Plaintiff,

v.

DIGITAL CHECK CORP.
d/b/a ST IMAGING,

    Defendant.

Case No. 2:15-cv-658-LA

**DECLARATION OF JON W. TEPP
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Jon W. Tepp, declare as follows:

1. I am a Senior Economist at Christensen Associates, an economic research and consulting firm located in Madison, Wisconsin.

2. I have been employed at Christensen Associates since 1998. Throughout my tenure at Christensen Associates, my primary responsibilities have been related to the measurement of economic phenomena in litigation—primarily the calculation of lost profits and other forms of damages.

3. I have authored reports regarding the measurement of damages and valuation of intellectual property. I have assisted in the calculation of damages in numerous cases related to breach of contract, patent infringement, wrongful death, price fixing, and other causes of action.

4. I received a Bachelor of Science degree in Economics from the University of Wisconsin–Stevens Point in 1995.

5. Except as otherwise stated, I have personal knowledge of the facts stated in this Declaration. I base my opinions in this Declaration on my education, training, experience, and the information that I have reviewed.

1

6.  I have issued two expert reports in this case that provide information related to e-Image's pecuniary losses and actual damages. I have also sat for a deposition in this case.

7.  e-Image has provided sales and financial documents as well as expert testimony on the issues of injury and harm. I understand that e-Image personnel cannot compile a complete list of lost sales because much of the evidence of lost sales was produced by ST Imaging as confidential information. I have had an opportunity to review the documents related to the injury e-Image suffered because of ST Imaging's false advertising. I have reviewed hundreds of pages of documents including e-Image's financial records, ST Imaging's financial records, invoices, purchase orders, RFPs, bid proposals, marketing materials, customer communications, technical expert reports, and 12 deposition transcripts. I have also had conversations with e-Image personnel and customers. My conversations with e-Image personnel include a conversation with e-Image's Vice President of Sales, Jeff Middleton. My conversations with scanner customers include a conversation with Lillian Pabone, the Assistant City Clerk for the City of Tamarac, Florida; a conversation with Barbara Schaab, the County Recorder for the County of Ashtabula, Ohio; and a conversation with Beth Cassara, the Central Records Manager for Littleton Public Schools in Littleton, Colorado.

8.  Based on this evidence, my opinion is that e-Image has been harmed by ST Imaging's false advertising and is entitled to monetary damages. It is my opinion that disgorgement of ST Imaging's unjust enrichment is the most appropriate form of damages in this case.

9.  The available documents and evidence in this case include numerous examples of head-to-head competition between e-Image and ST Imaging where ST Imaging's alleged false

statements regarding its products' capabilities and/or disparaging e-Image's products' ability to meet customer specifications impacted customers' potential purchasing decisions.

10. In my reports, I have identified numerous examples of sales e-Image lost to ST Imaging because of ST Imaging's false statements about its UL certification, optical magnification capabilities, and camera megapixel capabilities. Some of those examples of lost sales are ███████████████████████████████████████████████████████ ███████████████████████████████████████. These are just a few examples of sales lost by e-Image to ST Imaging. Additional examples are detailed in my expert reports.

11. In my expert reports, I have provided a detailed analysis, including citation to ST Imaging's own documents and witness depositions, that supports my opinion that e-Image has been damaged by the alleged false statements in this case. In my initial report, pages 13 through 42 discussed the fact of damage in this case—including many cites to evidence from ST Imaging and its resellers indicating the importance and impact of the features/functionality that is accused of being falsely advertised in this matter. In this section, I provided six pages (pp. 22-28) discussing false statements made in ST Imaging's marketing materials and 14 pages (pp. 28-42) discussing false statements made by ST Imaging in head-to-head bidding situations with e-Image.

12. In determining the amount of monetary recover to which e-Image is entitled, I understand that e-Image has the burden of demonstrating the revenues generated by the accused products during the alleged period of wrongdoing. e-Image has met this burden. It is my understanding that counsel for e-Image requested that ST Imaging produce revenue and profit data for its accused ViewScan sales, by product, for each year 2010 to present. Although ST Imaging has not, to my knowledge, produced a single source of these data for all accused products for the extent of the damages period, it did provide several separate data sources. I used three sources of

ST Imaging data in conjunction to identify the ViewScan sales revenues tied to its alleged false statements: (1) a spreadsheet titled accurate historical unit sales, revenues, and cost data" that identified ViewScan I revenues from April 2010 through 2014; (2) a pdf produced by ST Imaging that identifies its ViewScan II and ViewScan III revenues for 2013, 2014, and 2015; and (3) an income statement that provided aggregate revenue data for each year from 2010 through September 2016. ST Imaging's expert report accepts my calculation of revenues for the accused products in this case.

13. Contrary to the assertions in ST Imaging's Motion for Summary Judgment and damages expert report, I have not offered an opinion that 100 percent of ST Imaging sales would have been lost but-for the alleged false statements. I understand that, when measuring revenues for disgorgement under allegations of false advertising, it is the burden of the plaintiffs' damages expert to demonstrate the revenues generated by the falsely advertised products during the alleged period of wrongdoing while any deduction from these revenues must be proven by the defendant (ST Imaging in this case). While my original report cites substantial evidence that the fact of damage (lost profit of e-Image) exists in this case, I did not and have not calculated the exact amount of e-Image's lost sales/profits in this case. Further, I understand that disgorgement of ST Imaging's revenues may be appropriate in cases where it was unjustly enriched by its false statements even if these particular sales were not "lost sales" to e-Image.

14. I understand that the burden is on ST Imaging to establish those sales that were not the result of its false advertising and to prove the deductions from its gross revenue. In my Reply Report dated June 2, 2017, I indicated that it is my opinion that ST Imaging's damages expert Mr. Peters has not demonstrated that any of the accused sales should be excluded from my disgorgement calculation. ▮

4

[REDACTED] It is my opinion that the Mr. Peters' Report does not provide accurate or reliable evidence supporting either of these justifications for deducting revenues from the disgorgement of accused revenues in this case.

15. I understand that ST Imaging contends it competed with e-Image for only a fraction of the accused sales. In its Motion for Summary Judgment, ST Imaging has asserted that only about 50 percent of its sales were competitive with e-Image. [REDACTED] These estimates are contradicted by substantial documents and deposition testimony available in this case—including numerous cites in my original report. Further, the definition of "competitive sales" is not explicitly identified for each individual reseller cited in the Peters Report and no attempt to maintain a consistent definition across resellers is evident.

16. I understand that ST Imaging contends that customers purchased its products for reasons unrelated to its false statements. In its Motion for Summary Judgment, ST Imaging contends that other factors customers based their decisions on other factors, such as price and ease of use. I understand that ST Imaging has relied on the opinion of Mr. Peters that [REDACTED] This opinion is not based on any methodology or analysis that demonstrates the amount of sales that were not impacted by the alleged false statements. My original report includes numerous cites

demonstrating that the technical features touted in ST Imaging's alleged false statements played (and continue to play) a material role in customers' purchase decisions—including cites to ST Imaging documents and its resellers' testimony. It is my opinion that Mr. Peters' report has not provided any accurate or reliable measure of any sales/revenues that should appropriately be excluded from the disgorgement calculation.

17. Further showing that I analyzed the damage suffered by e-Image, my reply report explains why I disagree with Mr. Peters' opinion about the amount of expenses that should be deducted from gross revenue. From Mr. Peters' report, I understand that ST Imaging has taken the position that all ST Imaging expenses would be variable and should be deducted because my calculation of the accused revenues included all accused revenues during the relevant period. This is contrary to my understanding of demonstrating the relevant costs to be deducted in this (or any false advertising) case. As indicated in my original report, I understand that the appropriate costs to be deducted in the disgorgement calculation are variable costs—those that change with changes in the accused sales. In this case, it is my opinion that the Peters Report has only demonstrated that "Purchase Cost" and "Direct Selling Expense" would be appropriate to deduct in the disgorgement calculation.

18. In my report, I have broken down my damages calculation by false statement (UL certification, magnification, camera megapixels) and the periods of time that ST Imaging made each false statement. My report includes a table identifying profits by month for each ViewScan product. If the Court finds that ST Imaging's alleged false statements only affected its ViewScan sales for a subset of one or more of the products or only for a certain time period, my report allows me and the finder of fact to determine ST Imaging's profits for the particular product and from the particular time period for which ST Imaging has liability for false statements.

19. e-Image lost numerous sales to ST Imaging because of misrepresentations by ST Imaging related to UL or cUL certification. ███████████████████████
████████████████████████████████████████████████████████████

20. e-Image lost numerous sales to ST Imaging because of misrepresentations by ST Imaging related to optical magnification capabilities. ███████████████████
████████████████████████████████████████████████████████████
███████████████████

21. e-Image lost numerous sales to ST Imaging because of misrepresentations by ST Imaging related to camera megapixel capabilities. ██████████████████
████████████████████████████████████████████████████████████
███████

22. I disagree with ST Imaging's contention in its Motion for Summary Judgement at page 9 that I have no intention of testifying at trial about alleged lost profits. As I testified in my deposition and cited in ST Imaging's own Motion:

> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████
>
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████

My initial and reply reports include my calculation of the damages in this case through disgorgement of the amount of profit unjustly gained by ST Imaging.

7

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: 7/25/17

_____
Jon W. Tepp