# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**E-IMAGEDATA CORP.,**
        **Plaintiff,**

  v.                                                             Case No. 15-CV-658

**DIGITAL CHECK CORP.,**
        **Defendant.**

---

## DECISION AND ORDER

e-ImageData Corp. brings this action against Digital Check Corp. d/b/a ST Imaging and proceeds on claims of false or deceptive advertising in violation of § 43(a) of the Lanham Act, which provides in relevant part as follows:

> Any person who, on or in connection with any goods . . . , uses in commerce any . . . false or misleading description . . . or . . . representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods . . . or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). ST Imaging moves for summary judgment, and e-Image moves for partial summary judgment on liability as to certain of its claims under § 43(a).

On a party's motion, I must "grant summary judgment" on "each claim" or "part of each claim . . . on which summary judgment is sought. . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In addressing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. Where, as here, both parties move for summary judgment, each is entitled to "that sympathetic reading of the record" with respect to the other's motion. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). With these principles in mind, I next present the underlying facts and then describe e-Image's claims.

## I. BACKGROUND

e-Image and ST Imaging are commercial competitors that make, promote, and sell systems used to view and interact with materials stored in microform. "Microform" refers to various means of "reproducing printed matter or other graphic material in a much-reduced size," which allows for the storage of documents, books, periodicals, and images, among other things, in "durable, extremely compact, and easily accessible file records." *Microform*, Encyclopædia Britannica, https://www.britannica.com/technology/microform (last visited March 19, 2018). Reproducing materials in microform usually renders them unreadable to the naked eye. The parties' systems use hardware and software to allow users to view materials in microform on a screen and convert those materials into digital files that can then be saved, edited, printed, and shared.

e-Image and ST Imaging typically sell their systems, which cost thousands of dollars, to institutions like libraries, universities, and businesses. Each party sells through a national network of resellers, which respond to direct inquiries and requests for proposals from potential customers in their assigned territories. These resellers compete directly for many sales through a process that often includes bidding, in-person product demonstrations, and hands-on customer testing. The parties and their resellers

2

have found that customers base their purchasing decisions on a wide variety of factors, including but not limited to price, ease of use, and functionality.

Since 2006, e-Image has sold microform viewer and imaging systems under the brand name "ScanPro," including the ScanPro 1000, the ScanPro 2000, the ScanPro 3000, and the ScanPro i9300. Since 2010, ST Imaging has sold competing systems under the brand name "ViewScan," including the ViewScan I, which ST Imaging introduced in April of that year; the ViewScan II, which it introduced in June 2013; and the ViewScan III, which it introduced a year later, in June 2014.

For the most part, e-Image's claims arise from ST Imaging's statements about the characteristics of its ViewScan devices to potential customers during the sales process. For instance, an ST Imaging brochure for the ViewScan I provides that it has a "zoom range" of "7X to 54X Optical Zoom" and "7X to 96X Digital Auto Zoom," *see* Piery Decl. Ex. 5, ECF No. 84-8, at 5, and brochures for the ViewScan II and the ViewScan III provide that they have an "[o]ptical zoom lens 7X to 105X," *see* Piery Decl. Ex. 69, ECF No. 88-24, at 7; Piery Decl. Ex. 46, ECF No. 87-28, at 7. Though, a later brochure for the ViewScan II instead provides that it is capable of "[o]ptical" magnification "with digital zoom 7x to 105x." *See* Piery Decl. Ex. 70, ECF No. 88-25, at 7. The parties dispute the meaning and accuracy of these and other representations by ST Imaging about the "optical zoom capabilities of its ViewScan devices." *See* Pl.'s Mot., ECF No. 78.

Similarly, the parties dispute the meaning and accuracy of ST Imaging's statements about the "camera megapixel capabilities" of the ViewScan II and the ViewScan III. *See id.* For example, brochures for the ViewScan II provide, under the heading "Camera," for a "[m]aximum image size" of "80 megapixels," *see* Piery Decl.

Ex. 69, *supra*, at 7; Piery Decl. Ex. 70, *supra*, at 7, while a brochure for the ViewScan III advertises a "14 Megapixel Image Sensor – Capable of capturing more than 56 megapixels of data," *see* Wilbert Decl. Ex. 21, ECF No. 33, at 3.

e-Image also asserts false or deceptive advertising claims based on ST Imaging's representations that its ViewScan products are "UL Certified." UL, or Underwriters Laboratories, develops product safety standards, tests products for compliance with those standards, and certifies products that pass its tests. UL did not certify any of the ViewScan devices until December 2015—when it certified the ViewScan III—but brochures for all 3 devices, published months and years earlier, indicate UL certification. *See* Piery Decl. Ex. 5, *supra*, at 5; Piery Decl. Ex. 46, *supra*, at 7; Piery Decl. Ex. 69, *supra*, at 7; Piery Decl. Ex. 70, *supra*, at 7; *see also* Rennecker Dep., Piery Decl. Ex. 8, ECF No. 84-11, at 63:19–64:11 (explaining use of a number on each brochure indicating when it was published on ST Imaging's website).

Lastly, with respect to product claims, e-Image asserts that ST Imaging has falsely or deceptively equated its ViewScan devices with e-Image's competing ScanPro devices in direct communications to potential customers and to its resellers, encouraging them to equate the products when responding to requests for proposals and bids from potential customers. The parties dispute whether and to what extent these statements were made "in commercial advertising or promotion," as well as their meaning and accuracy, among other things.

e-Image also asserts claims arising out of a failed bid protest that it lodged, via one of its resellers, with the U.S. Government Accountability Office (GAO) after the National Park Service awarded a contract for the sale of "one camera microfilm

4

scanner" to an ST Imaging reseller. *See* GAO Decision, Ans. to 2d Am. Compl. Ex. G, ECF No. 34-7, at 1. e-Image argued that ST Imaging's product did not meet the terms of the government's solicitation for proposals, which required that the scanner's "camera have a 'minimum 25 megapixels.'" *Id.* at 2. The GAO concluded that "the solicitation was patently ambiguous," rejected e-Image's proposed interpretation as unachievable by any commercially available product, and denied e-Image's protest. *Id.* at 3–5.

The GAO made two findings in its published decision concerning e-Image's statements about the ScanPro 3000, its relevant competing product: (1) e-Image "knew that the ordinary convention in the industry was to represent camera megapixels in terms of the camera sensor itself" and, applying this industry convention, (2) the "camera sensor resolution" for the ScanPro 3000 is "6.6 megapixels," *id.* at 3–4, not "26 megapixel[s]," as e-Image continues to assert, *see* Pl.'s Add'l Facts, ECF No. 100, ¶ 91. ST Imaging pointed out these findings in an email newsletter to its authorized resellers, which states, "If you are in a bid and your prospect says that the competition has a 26 megapixel camera, please use [the GAO's decision] to show that they only use a 6.6 megapixel image sensor." *See* ST Imaging Informant, Oct. 10, 2014, Wilbert Decl. Ex. 34, ECF No. 94-17, at 3–4.

e-Image claims to have lost business because ST Imaging regularly exaggerates the capabilities of its ViewScan products; falsely advertises them as "UL Certified"; deceptively describes them as equivalent to e-Image's ScanPro products; and consistently attacks e-Image's reputation by claiming that e-Image lies about its own products' specifications. e-Image seeks monetary and injunctive relief.

5

## II. SUMMARY JUDGMENT

To prove a violation of "the false or deceptive advertising prong of § 43(a) of the Lanham Act," the plaintiff must demonstrate the following:

> (1) a false [or misleading] statement of fact by the defendant in a commercial advertisement [or promotion] about its own or another's product [or commercial activities]; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999)).

### A. ST Imaging's Motion for Summary Judgment

ST Imaging argues that it is entitled to summary judgment because e-Image cannot show that its alleged false statements caused e-Image any injury for which the Lanham Act provides relief, but much of its discussion of injury focuses instead on materiality and the availability of certain remedies. Materiality and injury are separate elements of a false advertising claim, and whether a defendant has engaged in false or deceptive advertising is a different inquiry from whether a particular remedy for that commercial misconduct is justified, *see Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). I will consider these issues separately.

**1. Materiality**

ST Imaging argues that e-Image "has no evidence that any alleged false statements materially influenced a customer's purchasing decision." *See* Def.'s Br., ECF No. 70, at 15. This argument implies that, to establish materiality, e-Image must prove

6

that a specific commercial statement by ST Imaging actually affected a specific purchasing decision by a specific customer. Yet, in assessing materiality in this context, courts generally only require a *likely*, as opposed to an *actual*, effect on consumer choice. *See Hot Wax*, 191 F.3d at 819 (noting that "deception is material" if "it is likely to influence the purchasing decision"); *see also, e.g.*, *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 313 (1st Cir. 2002) ("reiterat[ing] . . . that plaintiffs are not required to present evidence that defendants' misrepresentation actually influenced consumers' purchasing decisions, but that it was *likely* to influence them"); *see also* Vincent N. Palladino, *Lanham Act "False Advertising" Claims*, 101 Trademark Rep. 1601, 1620 & n.64 (2011). ST Imaging provides no legal support for its more onerous construction of the materiality requirement.

Under the proper standard, a reasonable jury could find that ST Imaging's alleged misrepresentations were material. For example, the record suggests that institutions looking to purchase microform systems commonly set requirements for bids, including minimum requirements for a scanner's "optical zoom lens" and "camera megapixels," *see, e.g.*, GAO Decision, *supra*, at 2 & n.1, and that the proposed product be tested and certified as meeting applicable product safety standards, like UL's, *see* Wilbert Decl. Ex. 33, ECF No. 94-15, at 2. Presumably, to even be considered for such sales, the parties' resellers had to represent compliance with these requirements, and the record suggests that ST Imaging's resellers did so, at least in part, by submitting prefabricated marketing materials from ST Imaging along with their bids, *see* Currier Dep., Wilbert Decl. Ex. 14, ECF No. 93-20, at 32:12–38:6. This is enough to raise a genuine dispute with respect to materiality. *See* Palladino, *supra*, at 1626–32

7

(discussing factors that may bear on the materiality of a commercial misrepresentation, including "the importance of the product . . . feature that is misrepresented" and "how a misrepresentation is used").

**2. Injury**

ST Imaging also argues that e-Image has no evidence of injury, as required to satisfy the final element of a § 43(a) false advertising claim. To prove such a claim, the plaintiff must show "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). In other words, "a plaintiff suing under [§ 43(a)] ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

ST Imaging argues that e-Image cannot prove that its alleged false advertising proximately caused it to lose business because "[t]he only customers deposed in this case testified that they purchased the ST Imaging ViewScan based on other factors, such as price and ease of use." *See* Def.'s Br., *supra*, at 16. Indeed, the record suggests that price, in particular, was a significant, and perhaps the dominant, factor in many of the purchasing decisions at issue here. *See, e.g.*, Carr Dep., Reid Decl. Ex. D, ECF No. 71-4, at 41:24 ("Price is always a factor"); Reid Decl. Ex. P, ECF No. 76-16, at 1 (stating that Harvard College Library "selected the ViewScan II" over the ScanPro 3000 "primarily because of lower overall cost" and ease of use).

Yet, that e-Image lost sales due to ST Imaging's lower prices does not end the proximate-cause inquiry. To the contrary, a reasonable jury could find that ST Imaging

8

was able to adopt lower prices by falsely claiming that its products were certified by UL and had capabilities that they lacked without incurring the usual costs of certification or product development. *See, e.g.*, Stip. Facts, ECF No. 68, ¶ 32 ("The cost of obtaining UL certification may be many thousands of dollars."). Similarly, a reasonable jury could find that by deceptively equating its products with e-Image's products, ST Imaging was able, in many cases, to mislead potential customers into making purchasing decisions based on price alone. As such, genuine disputes remain as to whether ST Imaging "was able to adopt lower prices because of its false advertising," *see BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1093 (7th Cir. 1994), and whether its false advertising proximately caused e-Image commercial injury.

### 3. Remedies

Finally, ST Imaging argues that summary judgment in its favor is warranted because e-Image cannot show that it is entitled to monetary relief. However, even assuming monetary remedies are not available here, e-Image also seeks injunctive relief, so summary judgment on this basis is inappropriate. Moreover, I will not limit e-Image's potential remedies given the parties' genuine disputes concerning liability. In general, "[e]very . . . final judgment," other than a default judgment, "should grant the relief to which each party is entitled." Fed. R. Civ. P. 54(c). In particular, "[t]he Lanham Act allows the district court a wide range of legal and equitable remedies for a violation of the Act," which "are intended to make violations . . . unprofitable, but not to act as a penalty," and "the district court has wide discretion to fashion an appropriate remedy." *BASF Corp.*, 41 F.3d at 1092. I cannot determine whether a particular remedy is appropriate until ST Imaging's liability, if any, is established and its extent is known.

## B. e-Image's Motion for Partial Summary Judgment

e-Image seeks partial summary judgment on liability (but not relief) to the extent that its claims are based on commercial statements by ST Imaging that were "literally false," as opposed to merely misleading, including its representations that its ViewScan devices were certified by UL. A "literal falsehood" actionable under § 43(a)'s false or deceptive advertising prong is considered to be "so obviously misleading that there is no need to gather evidence that anyone was confused" or deceived by it. *Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009). If a § 43(a) plaintiff cannot establish "literal falsity," it must "prove that the statement [was] 'misleading in context, as demonstrated by actual consumer confusion.'" *B. Sanfield*, 168 F.3d at 972 (quoting *BASF Corp.*, 41 F.3d at 1089). Thus, the plaintiff has a lighter burden of proof if a statement of fact by the defendant was literally false.

Yet, even if all of ST Imaging's statements were literally false, e-Image would still have to prove the remaining elements of its § 43(a) claims, including materiality and injury, to be entitled to judgment. As discussed above, viewing the record in the light most favorable to e-Image, a reasonable jury could find in its favor on those issues. However, viewing the record in the light most favorable to ST Imaging, as I must do in resolving e-Image's motion, a reasonable jury could instead find for ST Imaging on those issues. For example, the record suggests that a substantial majority of the parties' customers make their purchasing decisions after in-person product demonstrations that typically last one to two hours, *see* Middleton Dep., Reid Decl. Ex. A, ECF No. 76-1, at 21:8–22:4, which may mitigate or eliminate whatever influence ST Imaging's promotional statements might otherwise have on customers' purchasing decisions.

In sum, the present record reveals numerous genuine disputes of fact. As resolution of those disputes may affect the outcome of the case, they are disputes of material fact, which preclude summary judgment for either party. Therefore, I will deny both parties' motions for summary judgment.

### III. MOTIONS TO SEAL

The parties move to seal, in whole or in part, various documents that they filed in support of or opposition to summary judgment. In general, the court considers any document filed with it to be public. A party may request that certain documents be maintained under seal, but "documents . . . that influence or underpin [a] judicial decision" must be made "open to public inspection," *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002), unless a party "demonstrat[es] good cause for withholding the document[s] . . . from the public record," General L. R. 79(d)(3) (E.D. Wis.). Here, three documents that the parties seek to seal influenced my decision.

First, I relied upon exhibit 34 to the declaration of Johanna Wilbert in opposition to ST Imaging's motion for summary judgment, which contains "email correspondence sent by Matt Anderson of ST Imaging." Pl.'s Mot. to Seal, ECF No. 92, at 8. e-Image moves to seal this document pursuant, to the protective order in this case, because "ST Imaging designated this document as 'ATTORNEYS' EYES ONLY'" during discovery. *Id.* e-Image notes that this document contains "reseller information that ST Imaging considers proprietary" but does not otherwise argue in favor of maintaining it under seal. *Id.* By local rule, "the . . . party that originally designated the document[] . . . as confidential may . . . provide sufficient facts demonstrating good cause to continue sealing the document[]." General L. R. 79(d)(3) (E.D. Wis.). ST Imaging has not

provided any such facts. Thus, I will deny e-Image's motion to seal with respect to exhibit 34 to the Wilbert declaration and direct the Clerk of Court to publicly file it.

Second, I relied upon exhibit P to the declaration of Philip Reid in support of ST Imaging's motion for summary judgment. "ST Imaging takes no position as to the sealing" of this document, which e-Image designated as "Confidential" or "Attorneys' Eyes Only" during discovery. Def.'s Mot. to Seal, ECF No. 74, ¶ 6. e-Image describes this document as part of a group of documents containing emails, and related attachments, between "e-Image's National Sales Manager, Jeff Middleton, and various e-Image resellers" that contain "non-public trade secret[s]" about "competitive pricing and strategic planning." Pl.'s Resp., ECF No. 90, ¶ 5. However, exhibit P does not fit this description. It is an email between an e-Image reseller and Harvard College Library concerning Harvard's decision to purchase ST Imaging's products instead of e-Image's products, and as far as I can tell, it does not contain any specific information about pricing or strategic planning that could reasonably be considered a trade secret. Accordingly, I will deny ST Imaging's motion to seal with respect to exhibit P to the Reid declaration and direct the Clerk of Court to publicly file that document.

Finally, I relied upon exhibit A to the declaration of Philip Reid in support of ST Imaging's motion for summary judgment. Again, "ST Imaging takes no position as to the sealing" of this document, which e-Image designated as "Confidential" or "Attorneys' Eyes Only" during discovery. Def.'s Mot. to Seal, *supra*, ¶ 5. e-Image argues that this document, which "consist[s] of selected pages from" the deposition of "e-Image's National Sales Manager, Jeff Middleton," contains or references "non-public trade secret information regarding competitive pricing and strategic planning" so should

remain sealed. Pl.'s Resp., *supra*, ¶ 6. While I find e-Image's argument for sealing this document unconvincing, I only relied upon portions of 2 of its 25 pages, so I need not make it open to public inspection in its entirety. I will deny ST Imaging's motion to seal with respect to exhibit A to the Reid declaration, but I will not direct the Clerk of Court to publicly file it. Instead, I will order e-Image to file a version of this document that makes public those portions of it cited in this decision.

Aside from these three exhibits, I did not rely upon any of the documents that the parties seek to seal, so they need not be made open to public inspection at this time. Thus, except as provided above, I will grant the parties' motions to seal.

### IV. CONCLUSION

**THUS, IT IS ORDERED** that ST Imaging's motion for summary judgment (ECF No. 69) and e-Image's motion for partial summary judgment (ECF No. 78) are **DENIED**.

**IT IS FURTHER ORDERED** that ST Imaging's first motion to seal (ECF No. 74) is **DENIED** with respect to exhibit A to the declaration of Philip Reid (ECF No. 76-1) and that e-Image shall file a public version of this document, as discussed above, no later than 10 days after the date of this order. If e-Image fails to comply with this order, I will direct the Clerk of Court to publicly file this document in its entirety.

**IT IS FURTHER ORDERED** that ST Imaging's first motion to seal (ECF No. 74) is **DENIED** with respect to exhibit P to the declaration of Philip Reid (ECF No. 76-16), which the Clerk of Court shall publicly file.

**IT IS FURTHER ORDERED** that e-Image's second motion to seal (ECF No. 92) is **DENIED** with respect to exhibit 34 to the declaration of Johanna Wilbert (ECF No. 94-17), which the Clerk of Court shall publicly file.

**IT IS FURTHER ORDERED** that, except as otherwise ordered above, the parties' motions to seal (ECF Nos. 74, 79, 92, 102, 114, and 119) are **GRANTED**.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2018.

<pre>
                          s/Lynn Adelman
                          LYNN ADELMAN
                          District Judge
</pre>