UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

E-IMAGEDATA CORP.,

    Plaintiff,

v.                                           Case No. 2:15-cv-00658-LA

DIGITAL CHECK CORP.
d/b/a ST Imaging,

    Defendant.                     PUBLIC VERSION

## E-IMAGEDATA CORP.'S BRIEF IN SUPPORT OF ITS MOTION
## TO PARTIALLY EXCLUDE OR LIMIT TESTIMONY OF PHILIP BARBONI

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................. 1
BACKGROUND FACTS ........................................................................................................... 1
ARGUMENT ............................................................................................................................... 3
    I.    RULE 701 EXCLUDES FROM LAY TESTIMONY OPINIONS BASED ON SCIENTIFIC, TECHNICAL, OR OTHER SPECIALIZED KNOWLEDGE ................................................................................................. 3
        A.    Opinions based on specialized knowledge are expert opinions ................. 3
        B.    Mr. Barboni's testimony regarding the megapixel capabilities of the ViewScan are expert opinions ............................................... 5
        C.    Mr. Barboni's testimony regarding the megapixel capabilities of the ScanPro are expert opinions ................................................ 7
    II.    RULE 702 REQUIRES EXPERTS TO BE QUALIFIED AND TESTIMONY TO BE BASED ON RELIABLE PRINCIPLES AND METHODS ...................................................................................................... 8
        A.    The Seventh Circuit requires testing to support technical opinions .......... 9
        B.    Mr. Barboni did not independently analyze the source code for the ViewScan or the ScanPro ........................................................ 10
    III.    THE EXPERT OPINIONS WERE NOT OFFERED TIMELY ........................... 12
CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Honda Motor Co. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) ................................................................................................. 8

*Baratto v. Brushstrokes Fine Art, Inc.*,
   701 F. Supp. 2d 1068 (W.D. Wis. 2010) ................................................................................. 5

*Bossard IIP, Inc. v. Special Fasteners Eng'g Co.*,
   No. 03-C-1434, 2008 WL 1868982 (E.D. Wis. Apr. 23, 2008) ................................................ 5

*Chapman v. Maytag Corp.*,
   297 F.3d 682 (7th Cir. 2002) ............................................................................................ 9, 10

*Ciomber v. Coop. Plus, Inc.*,
   527 F.3d 635 (7th Cir. 2008) ............................................................................................... 12

*Collar v. Collar*,
   No. 04-C-0620, 2005 WL 1268909 (E.D. Wis. May 27, 2005) ............................................. 12

*Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Intern., Inc.*,
   533 F.3d 555 (7th Cir. 2008) ............................................................................................. 3, 4

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................................... 8, 9, 11

*Fuesting v. Zimmer, Inc.*,
   421 F.3d 528 (7th Cir. 2005), *opinion vacated in part on other grounds*,
   448 F.3d 936 (7th Cir. 2006) ................................................................................................. 9

*Fujitsu Ltd. v. Netgear, Inc.*,
   No. 0-CV-710-BBC, 2009 WL 2341810 (W.D. Wis. July 29, 2009) ....................................... 4

*Gayton v. McCoy*,
   593 F.3d 610 (7th Cir. 2010) ................................................................................................. 8

*Greengrass v. Int'l Monetary Sys., Ltd.*,
   No. 12-C-212, 2015 WL 5673016 (E.D. Wis. Sept. 25, 2015) ................................................ 3

*Higgins v. Koch Dev. Corp.*,
   794 F.3d 697 (7th Cir. 2015) ............................................................................................... 13

*Hill v. Porter Mem. Hosp.*,
   90 F.3d 220 (7th Cir.1996) ............................................................................................... 4

*McCorvey v. Baxter Healthcare Corp.*,
   298 F.3d 1253 (11th Cir 2002) ......................................................................................... 9

*Mid–State Fertilizer Co. v. Exch. Nat'l Bank*,
   877 F.2d 1333 (7th Cir.1989) ......................................................................................... 10

*Musser v. Gentiva Health Servs.*,
   356 F.3d 751 (7th Cir. 2004) .......................................................................................... 13

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   986 F. Supp. 2d 776 (N.D. Tex. 2013) ........................................................................... 10

*Rosen v. Ciba-Geigy Corp.*,
   78 F.3d 316 (7th Cir. 1996) ............................................................................................ 10

*Rowley v. Union Pac. R.R. Co.*,
   No. 11-CV-46, 2016 WL 6561296 (E.D. Wis. Nov. 3, 2016).................................... 11

*Salgado v. Gen. Motors Corp.*,
   150 F.3d 735 (7th Cir.1998) ............................................................................................. 4

*United States. v. Conn*,
   297 F.3d 548 (7th Cir. 2002) ................................................................................... 3, 4, 6

*WNS Holdings, LLC v. United Parcel Serv., Inc.*,
   No. 08-cv-275-bbc, 2009 WL 2136961 (W.D. Wis. 2009) ........................................... 7

**Rules**

FED. R. CIV. P. 26................................................................................................................. 12

FED. R. EVID. 701............................................................................................................. 3, 4

FED. R. EVID. 702................................................................................................................. 8

# SUMMARY OF ARGUMENT

e-Image moves to limit the testimony of Mr. Barboni to exclude the particular portions of Mr. Barboni's testimony that relate to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. By framing Mr. Barboni's opinions as lay testimony, ST Imaging improperly seeks to evade the disclosure requirements of Federal Rule of Civil Procedure 26 and the reliability requirements of Federal Rule of Evidence 702. However, Mr. Barboni's opinions about ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Because ST Imaging never disclosed Mr. Barboni as an expert, his expert opinions should be excluded. To the extent Mr. Barboni's expert opinions were disclosed, Mr. Barboni's opinions are unreliable because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ about which he opines. Finally, even if Mr. Barboni's opinions are lay testimony, Mr. Barboni's statements and opinions are not based on personal knowledge as required by Rules 602 and 701. In sum, Mr. Barboni's opinions are undisclosed and inadmissible, and cannot be used by ST Imaging to defeat summary judgment, nor should they be presented to a jury at trial.

# BACKGROUND FACTS

At issue are specific technical statements in ST Imaging's marketing material about its ViewScan product line including statements related to the size of the camera in the ViewScan products and the size of the camera in e-Image's ScanPro products. Digital cameras include an image sensor, which is the digital equivalent of film. (Dkt. 97-1, Ellis Decl. ¶ 11, July 27, 2017.) Just as traditional cameras used film to capture light from an object to form an image, digital cameras use image sensors to capture light from an object and convert that light into a digital signal to form an image. (*Id.*) An image sensor captures light using tiny light sensitive squares called pixels. (*Id.*) A megapixel is one million pixels. (*Id.*)

While some cameras can only produce an image with the same megapixel count as the camera's image sensor, some cameras use software in the camera to increase the megapixel count beyond what the image sensor alone can produce. (*Id.* ¶ 13.) This is how technology such as panoramic shots, or pixel shifting work. (*Id.*) To determine the megapixel count of a camera it is necessary to evaluate the methodology by which images are captured and the manner in which the image capture data is processed within the camera to determine the size of the image that is output by the camera. (*Id.*) This often requires evaluating the source code associated with the camera's image capture and data process functions. (*Id.* ¶¶ 9, 22.)

Mr. Barboni offers ███████████████████████████████ ███████████████████████. (Wilbert Decl. Ex. 10, Barboni Dep. 142:6–144:21; 154:2–156:1, Feb. 24, 2017.) The megapixel capabilities of these products rely on ██████ ██████████████████████████████████. However, Mr. Barboni did not design the software used by the ViewScan to enhance the images captured by its camera system or review its source code. (*Id.* at 149:25–151:13.) Similarly, Mr. Barboni ██████████████████████ ████████████████████████████████████████. (*Id.* at 129:10–17.) Because Mr. Barboni does not have personal knowledge regarding the source code related to the megapixel capability of either product, his opinion testimony must be based on his engineering education and experience. However, Mr. Barboni is a fact witness and has not been identified as an expert witness by ST Imaging with respect to the megapixel issue. ST Imaging never provided an expert report from Barboni detailing his opinions regarding the camera capabilities for either the ViewScan or ScanPro products. ST Imaging seeks to improperly rely on Barboni opinions that were offered as part of his lay witness testimony. Further, even if these opinions were properly disclosed, they would be deficient under the *Daubert* standard.

**ARGUMENT**

**I.    RULE 701 EXCLUDES FROM LAY TESTIMONY OPINIONS BASED ON SCIENTIFIC, TECHNICAL, OR OTHER SPECIALIZED KNOWLEDGE.**

**A.    Opinions based on specialized knowledge are expert opinions.**

Federal Rule of Evidence 701, governing lay opinion testimony, specifically states that lay testimony cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Rule 701 also requires that lay opinion testimony must be "rationally based on the perception of the witness." *Id.* The Seventh Circuit has emphasized that Rule 701 was designed "to prevent parties from 'proffering an expert in lay witness clothing.'" *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Intern., Inc.*, 533 F.3d 555, 561 (7th Cir. 2008) (quoting FED. R. EVID. 701(advisory committee notes)). That is exactly what ST Imaging seeks to do with Mr. Barboni's opinions.

Opinions are properly considered expert testimony when they are not based on firsthand knowledge, but are instead opinions on facts using "scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002). In contrast, lay testimony "most often takes the form of a summary of first-hand sensory observations." *Id.* In other words, "[l]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Greengrass v. Int'l Monetary Sys., Ltd.*, No. 12-C-212, 2015 WL 5673016, at *2 (E.D. Wis. Sept. 25, 2015) (internal quotation and citation omitted).

Testimony based solely on a person's special training or experience is properly classified as expert testimony, and therefore it is not admissible as lay opinion testimony under Rule 701.

3

*Titan Intern.*, 533 F.3d at 561.  Rule 701 was amended specifically "to emphasize that lay opinion testimony is limited to those observations of a lay witness that are 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Conn*, 297 F.3d at 555 (quoting FED. R. EVID. 701).  Under Rule 701, lay witnesses may only offer testimony that is (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  FED. R. EVID. 701.  Accordingly, "courts must scrutinize witness testimony to ensure that all testimony based on scientific, technical or other specialized knowledge is subjected to the reliability standard of Rule 702." *Id.*.

*Titan Intern.* is analogous to the present fact pattern.  In *Titan Intern.*, the defendant offered as lay testimony its CEO's estimated value of the collateral at the center of the dispute.  533 F.3d at 558.  The court affirmed the district court's ruling that this challenged lay witness testimony should be excluded as expert opinion because it was based solely on the CEO's special training and experience, and not his personal knowledge of the collateral in question.  *Id.* at 561.  The court further stated: "Because [defendant] failed to disclose [its CEO] as an expert witness prior to the disclosure deadline, the district court did not abuse its discretion when it excluded his testimony." *Id.* (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998)); *Hill v. Porter Mem. Hosp.*, 90 F.3d 220, 224 (7th Cir. 1996).

Courts in the Seventh Circuit refuse to allow expert witnesses to avoid the scrutiny of *Daubert* by claiming to be lay witnesses.  *See, e.g., Fujitsu Ltd. v. Netgear, Inc.*, No. 0-CV-710-BBC, 2009 WL 2341810, at *3–4 (W.D. Wis. July 29, 2009) (excluding as undisclosed expert opinions testimony from employees about how electronic chipsets function).  In scrutinizing the witness's testimony, courts determine "whether the witness has specialized knowledge that the lay

person cannot be expected to possess and reasonably applies that knowledge to the relevant facts." *Bossard IIP, Inc. v. Special Fasteners Eng'g Co.*, No. 03-C-1434, 2008 WL 1868982, at *9 (E.D. Wis. Apr. 23, 2008) (internal quotation omitted). This "specialized knowledge" test prevents experts from "eva[ding] the reliability requirements of Rule 702 and the disclosure requirements of Rule 26." *Bossard*, 2008 WL 1868982, at *9

For example, in *Baratto*, the Western District of Wisconsin excluded certain testimony from an inventor of the patent-in-suit who was not named as an expert witness. *Baratto v. Brushstrokes Fine Art, Inc.*, 701 F. Supp. 2d 1068, 1074 (W.D. Wis. 2010). The inventor offered testimony about how the invention was supposed to function and how those functions related to the accused product. *Id.* The court held that this testimony was based on the specialized knowledge of an expert because it would have been "impossible for an untrained layman to speak to these matters." *Id.* The court accordingly disregarded the proposed findings of fact supported by the inventor's declaration. *Id.*

### B. Mr. Barboni's testimony regarding the megapixel capabilities of the ViewScan are expert opinions.

Here Mr. Barboni has no personal knowledge regarding the source code used to modify the images produced by the ViewScan. According to his own testimony, Mr. Barboni did not develop the software application used in the ViewScan products and did not personally delve into the relevant portions of the source code such that he can be considered to have personal knowledge. (Wilbert Decl. Ex. 10, Barboni Dep. 149:25–151:13.) As Barboni did not perceive the source code first hand, his opinions regarding the megapixel capabilities of the ViewScan are, presumably, only based then upon statements made to him by other ST Imaging employees. (*Id.*) These opinions fit squarely within the definition of expert testimony and should therefore be excluded because ST Imaging did not adequately disclose the basis for these opinions in a timely manner.

Understanding of ST Imaging's image manipulation and optical data post-processing requires scientific and technological knowledge a lay witness cannot be expected to possess. ST Imaging's products are structured much like electronic office equipment (e.g., photocopier, scanner, etc.) in that a user would not be able to identify the internal functioning from using the equipment. A lay witness without Mr. Barboni's education and experience would not be capable of providing any explanation of how ST Imaging's image enhancement process works. *See Conn*, 297 F.3d at 554 (explaining that lay-opinion testimony is not admissible "to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events").

Given that the false advertising claims center on the accuracy of statements about image size, it is critical that testimony about image enhancement be accurate and well-supported. Mr. Barboni's opinions about the ViewScan image enhancement process are based on specialized knowledge because Mr. Barboni has no personal knowledge of the underlying facts. Mr. Barboni's opinions of the image enhancement process cannot be based on his firsthand knowledge of the enhancement process because Mr. Barboni did not design, draft, or even review the ViewScan source code that implements the enhancement process. (Wilbert Decl. Ex. 10, Barboni Dep. 149:25–151:13.) Thus, any explanation or description by Mr. Barboni of the enhancement process (and the associated megapixel capabilities) used by ST Imaging is based on statements made to him by other ST Imaging employees and his specialized knowledge.

Mr. Barboni's experience with the ViewScan camera is not sufficient firsthand knowledge of how the software works. The *WNS Holdings* case is analogous. In *WNS Holdings*, the court excluded certain deposition testimony of the defendant's employee because it was based on the employee's specialized knowledge. *WNS Holdings, LLC v. United Parcel Serv., Inc.*, No. 08-cv-

6
QB\53648869.1
Case 2:15-cv-00658-LA   Filed 08/24/18   Page 10 of 18   Document 158

275-bbc, 2009 WL 2136961, at *3 (W.D. Wis. July 14, 2009). The employee provided a declaration and deposition testimony regarding avionics equipment located on the defendant's aircraft. *Id.* at *2. This testimony included explanations of the type of avionics equipment on the aircraft and how the avionics equipment worked. *Id.* at *3. The court admitted the testimony about the type of avionics equipment as lay testimony because the employee had personal, firsthand knowledge of these facts from installing the equipment. *Id.* The court, however, excluded the testimony regarding how the avionics equipment worked as improper expert testimony because the employee did not have personal knowledge of how the equipment worked. *Id.* As the court explained, "it should come as no surprise that testimony about *how* equipment works generally requires a foundation of specialized knowledge to produce explanations or interpretations that an untrained layman could not reach from perceiving the same equipment in use." *Id.* (emphasis in original).

Here, Mr. Barboni seeks to opine on *how* the ViewScan source code works to accomplish the image enhancement process. As in *WNS Holding*, Mr. Barboni's opinion about how the source code works requires a foundation of specialized knowledge that an untrained layman could not reach from perceiving the camera in use. Mr. Barboni's testimony is accordingly based on specialized knowledge and properly considered expert testimony.

### C. Mr. Barboni's testimony regarding the megapixel capabilities of the ScanPro are expert opinions.

Mr. Barboni's opinions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Wilbert Decl. Ex. 10, Barboni Dep. at 129:10–17.) Thus, Mr. Barboni's opinions regarding the ScanPro's megapixel capabilities can only be based on second hand, hearsay statements

7

QB\53648869.1

Case 2:15-cv-00658-LA   Filed 08/24/18   Page 11 of 18   Document 158

because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Accordingly, these opinions should be excluded.

## II. RULE 702 REQUIRES EXPERTS TO BE QUALIFIED AND TESTIMONY TO BE BASED ON RELIABLE PRINCIPLES AND METHODS.

Even if ST Imaging had properly disclosed Mr. Barboni as an expert regarding the megapixel capabilities of the ViewScan and ScanPro products, his opinions would still be deficient under Federal Rule of Evidence 702. Rule 702 states that an expert who is qualified "by knowledge, skill, experience, training, or education" may testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Rule 702 further requires that expert opinion is based on sufficient facts, reliable methods, and that the expert has reliably applied the methods to the facts of the case. *Id.* Under the Supreme Court's *Daubert* decision, the court has construed Rule 702 and requires the trial court to act as a "gatekeeper" and only admit expert testimony after the court receives "satisfactory evidence of reliability." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "Under the *Daubert* framework, a district court must determine 'whether a given expert is qualified to testify in the case in question and whether his testimony is scientifically reliable.'" *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) (quoting *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010)).

As gatekeeper, the Court must determine whether Mr. Barboni is qualified, and whether he used a scientifically reliable methodology to arrive at the challenged opinions. *See, e.g.*, *Gayton*, 593 F.3d at 616; *see also*, FED. R. EVID. 702(c) and (d). Importantly, the Court should "consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Gayton*, 593 F.3d at 616. *Daubert* provides a non-exhaustive list of factors to help assess the reliability of scientific expert testimony, which

8

includes the following: "(1) whether the scientific theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error when applied; and (4) whether the theory has been 'generally accepted' in the scientific community." *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 534 (7th Cir. 2005), *vacated in part on other grounds*, 448 F.3d 936 (7th Cir. 2006) (citing *Daubert*, 509 U.S. at 593–94)).

In this case, Mr. Barboni's opinions as to the megapixel capabilities of the ViewScan and ScanPro products fail each element listed in *Daubert*. But in particular, Mr. Barboni ███████████████████████████████████████████████████████████████

### A. The Seventh Circuit requires testing to support technical opinions.

Of primary importance, when evaluating whether a proposed expert's testimony is reliable, is whether the expert's work has been subject to the scientific method. *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (finding error in the admission of expert testimony unsupported by scientific tests, experiments, and studies). An important aspect of *Daubert's* reliability inquiry into an expert's methodology is whether the opinion has been and can be tested. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

The Seventh Circuit has emphasized the importance of testing. *See Fuesting*, 421 F.3d at 536. In *Fuesting*, the Seventh Circuit found an expert's testimony on causation unreliable because the expert did not conduct any scientific tests or experiments to support his theory of causation, nor did he produce or rely on any studies to verify his conclusions. *Id.*. The lack of technical support for the expert's theory led the Seventh Circuit to state that "[s]uch insulation of his theory from the dispassionate crucible deeply, if not fatally, compromises his testimony's reliability." *Id.* Likewise, in *Chapman*, the Seventh Circuit held that an expert's testimony was inadmissible in

large part because he did not conduct any tests or experiments and produced no tests or experiments to support his opinions. 297 F.3d at 686–87.

> **B.** **Mr. Barboni did not independently analyze the source code for the ViewScan or the ScanPro.**

It is undisputed that Mr. Barboni failed to conduct any testing to support his opinions. Mr. Barboni relied on what others told him with respect to the ViewScan products, and merely based his opinions regarding the ScanPro on conjecture. (Wilbert Decl. Ex. 10, Barboni Dep. 149:25–151:13; 129:10–17.) Repeating statements of others is not a scientifically reliable method to determine megapixel capabilities of a camera system. *See Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (quoting *Mid–State Fertilizer Co. v. Exch. Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir.1989) ("an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process"); *see also, e.g., Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him.").

Mr. Barboni's opinions about the ViewScan image enhancement process are not based on sufficient facts or reliable methodology because he did not even review the source code that defines the process. To provide a reliable expert opinion, Mr. Barboni was required to perform his own independent analysis. Yet, Mr. Barboni admits that he did not design, draft, or review the source codes associated with the enhancement processes for the ViewScan. (Wilbert Decl. Ex. 10, Barboni Dep. 149:25–151:13.)

Mr. Barboni's testimony demonstrates that he did not review the source code. One portion of the image enhancement algorithm averages pixels captured by the camera. When asked about

10

the type of average used in the code (e.g., weighted average or simple average), Mr. Barboni responded that it was outside of his knowledge and only offered a "guess":

```
2    Q   Do you know what type of average is used?
3        MR. NELSON: Object to the form.
4  BY MS. WILBERT:
5    Q   I'm being serious.
6    A   I've never specifically asked the question.
7    Q   Okay.
8    A   My -- my guess would be it's a weighted
9  average.
10   Q   But this is outside of what your knowledge is?
11   A   Yeah. I don't -- I've never -- I've never been
12 in -- I've never been into this part of the code to see
13 exactly how it works.
```

(*Id.* at 151:2–13.)

Mr. Barboni's guesswork is precisely the type of unreliable testimony that *Daubert* forbids. *Daubert*, 509 U.S. at 589–90 (expert testimony must contain "more than subjective belief or unsupported speculation"). Under the court's gatekeeping role, the court must "determine whether proposed expert testimony is both relevant and reliable." *Rowley v. Union Pac. R.R. Co.*, No. 11-CV-46, 2016 WL 6561296, at *1 (E.D. Wis. Nov. 3, 2016) (internal quotation and citation omitted). Where, as here, the basis for an opinion is "properly characterized as a hunch or an informed guess," that opinion is unreliable and inadmissible. *Id.* at *4.

Mr. Barboni's opinions are so unreliable that they contradict the testimony of Mr. Hamel, ST Imaging's corporate representative designated on topics related to the ViewScan source code. Mr. Hamel, who actually read the source code, testified that the ViewScan II captures eight images. (Wilbert Decl. Ex 11, Hamel Dep. 65:1–9, May 9, 2017.) In contrast, Mr. Barboni testified that the ViewScan captures only six images. (Wilbert Decl. Ex. 10, Barboni Dep. 142:6–22.)

11

Mr. Barboni's testimony cannot assist the trier of fact to understand the evidence when he is creating an internal factual dispute with ST Imaging's own corporate representative.

Mr. Barboni's opinions about the ScanPro's pixel-shifting process are similarly unreliable. Mr. Barboni failed to perform any independent analysis of the source code for the ScanPro. (*Id.* at 129:10–17.) Mr. Barboni admits that he did not review the ScanPro pixel-shifting source code. (*Id.*) Without independent analysis of the source code, Mr. Barboni's opinions about how the source code works are unreliable, not based on sufficient facts, and should be excluded.

### III.     THE EXPERT OPINIONS WERE NOT OFFERED TIMELY.

Mr. Barboni's opinions regarding megapixel capabilities should also be excluded because ST Imaging did not disclose the basis for those expert opinions in a timely manner. "Fed.R.Civ.P. 26(a)(2) requires a party to disclose its experts and provide expert reports at a time directed by the court." *Collar v. Collar*, No. 04-C-0620, 2005 WL 1268909, at *2 (E.D. Wis. May 27, 2005). It is undisputed that Mr. Barboni did not provide a report and was not specifically disclosed as an expert. (Dkt. 131, Def.'s Br. in Oppos. to Mot. to Partially Exclude Barboni Testimony at 9–10.) Accordingly, Mr. Barboni's expert opinions should be excluded. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) ("Failure to comply with Rule 26(a)(2)'s requirements results in sanction: the offending party is not allowed to introduce the expert witness's testimony as evidence on a motion, at a hearing, or at a trial.") (internal quotation omitted).

Identifying Mr. Barboni in its Rule 26(a)(1) initial disclosures did not satisfy ST Imaging's disclosure requirement. Under Rule 26 "[i]n *addition to* the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702." FED. R. CIV. P. 26(a)(2) (emphasis added). The Seventh Circuit has explained that "disclosing a person as a witness and disclosing a person as an expert witness are two distinct acts." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir.

12

2004). A separate expert witness disclosure is required even if the expert is not required to provide a report. *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 26(a)(2)(C) makes clear that, for all expert witnesses from whom a written report is not required [], the litigant who seeks to use that expert's opinion testimony must nonetheless disclose to the other party 'the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705' and 'a summary of the facts and opinions to which the witness is expected to testify.'").

In this case, the court issued a scheduling order, which required disclosure of expert witnesses by the party not bearing the burden of proof on or before June 22, 2016. (Dkt. 18, Scheduling Order at 2.) This disclosure date was amended to May 3, 2017. (Dkt. 64, Order to Amend Scheduling Order.) This disclosure date has long since expired without ST Imaging disclosing Mr. Barboni as an employee that will be offering expert testimony. Accordingly, Mr. Barboni's undisclosed expert testimony should be excluded.

## **CONCLUSION**

ST Imaging failed to timely disclose Mr. Barboni's expert opinions and now tries to improperly rely on these opinions as lay testimony. Further, Mr. Barboni failed to perform any independent analysis regarding the megapixel capabilities of the ViewScan and ScanPro products. Thus, for either of these reasons, Mr. Barboni's opinions on this issue should be excluded.

Dated this 24th day of August, 2018. Respectfully submitted,

>*s/David P. Muth*
>David P. Muth
>Johanna M. Wilbert
>Michael T. Piery
>QUARLES & BRADY LLP
>411 East Wisconsin Avenue, Suite 2350
>Milwaukee, WI 53202-4497
>414-277-5000
>
>Matthew J. Duchemin
>QUARLES & BRADY LLP
>33 East Main Street, Suite 900
>Madison, WI 53703
>608-251-5000
>
>*Attorneys for Plaintiff, e-ImageData Corp.*